May it please the Court, I'm Christopher Leonard, here representing the appellants, and I would like to reserve three minutes for rebuttal, if I may. This case is on appeal on an issue of a duty to defend, not a duty to indemnify. This is an insurance... I have a quick, okay? The quick is, as I understand your position, it depends on the notion that the underlying complaint here was at least arguably or possibly or conceivably seeking damages for something other than the sale of the phone lines and equipment. That's part of our argument, Your Honor. So therefore, it seems to me that the complaint, the underlying complaint, is pretty clear about the fact that that isn't true. Because it says on page four, in the generic, before it gets to the individual allegations, as a consequence of ITC's wrongful conduct in selling Claude's phone lines and equipment to King, Claude seeks general and special damages of no less than a million dollars and punitive damages from the discretion of the jury. Isn't it a fair understanding that that's what the complaint's about? I think that that is part of what the complaint's about, but I don't agree that it's a fair reading that that's the only thing the complaint's about. And I would like to direct the Court to a couple of other allegations that I think bear on it. Specifically, they argue that the gist of the complaint is about the transfer of the phone lines, the transfer of the equipment. The duty to defend doesn't concern itself with what the gist of the complaint is. If there is any allegation — That's why I find this interesting. This is a statement about what the complaint is about, what they are seeking. They are seeking, as a consequence of ITC's wrongful conduct in selling Claude's phone lines and equipment. This isn't, you know, touchy-feely. This is exactly what's in the complaint. They are seeking general and special damages. That's what they say. That's one of their allegations. Let me call the Court's attention to another one of the allegations. In the breach of contract cause of action, they allege that — it's paragraph 6 of each of the complaints. Page 73 of the excerpts of record is one example. They allege that, quote, IDC's conduct, as alleged herein, constitutes a material breach of the agreement between IDC and EGLE to provide monitoring services. That's an allegation that follows after they've talked about the fact that Criticom, IDC, was allegedly providing monitoring services up through February of 2002. They do allege that King, a different entity, provided inferior monitoring services during this time, but they also, in an overlapping manner, allege that Criticom was providing the services at that same time. Where is that? I'm sorry. Sure. Paragraph. ER excerpts, page 57. I'll give you the paragraph. It's actually not numbered. That part, page of the complaint, doesn't have numbered paragraphs. But here's the quote. During the period February 1998 to February 2000, IDC, which is the DBA of Criticom, provided essentially the same monitoring services to plaintiff previously provided to CMS. Plaintiff paid IDC a monthly monitoring fee. They then go on to allege — I'm sorry. We're having a very hard time because this Section 1 is called Summary of Complaint. The piece that you're reading is before the paragraph that I read you. And the paragraph that I read you says very specifically what they're seeking damages for, and it's not from monitoring. Well, let me call your attention to excerpts of record, page 65, which is also part of the complaint. The particular paragraph you read from does say that they're seeking damages based on the transfer of the lines. But at page 65, paragraph 36, and it's the same in each of the complaints, it states, IDC failed to properly perform its obligations and breached its duty of care by, among other things, selling Claude's phone lines to King. This is the negligence claim. This is the claim that we — Let's stick for a moment to the specific example of your, among other things, that is to say selling Claude's lines to King or selling any of the other lines to King. Are you alleging that somehow that was negligent? How was that negligent? The selling of the phone lines? Yes. Well, I think that the tort of conversion is not necessarily an intentional tort. It is conceivable that Credit Com had a good faith belief that this was its property or simply it made a mistake as to what property was being transferred. That's not apparent one way or the other as to what exactly they're alleging from the face of the complaint. Isn't there a California law that says that negligence isn't the key to anything anyway, that in order to have an occurrence, you have to have an accident, and that doesn't necessarily mean anything that's negligent? Well, I think negligence is in distinction to an intentional act. Negligence is an act that doesn't meet the standard of reasonable care. That's right. But that doesn't suffice to make it into an accident or an occurrence, does it? Well, Your Honor, the occurrence issue only comes into play on the property damage part of our argument. Under the errors and omissions coverage, there's no requirement that there be an accident. Doesn't the errors and omissions coverage have to be in the normal course of business? The errors and omissions requires that it be a negligent act, error, or omission while performing any services normal to the business. So isn't a sale just out at that point? I don't think it is, Your Honor. I think that that's not our principal argument that the sale falls within the errors and omissions coverage, but I think that it does. To constitute a covered event under the E&O coverage, there has to be complaint-seeking damages, complaint-alleging negligent acts, both of which are here. The sole issue is whether they were acts alleged while performing any services normal to the business of the insured. Professional services is a different type of coverage provided in this same policy. That's a coverage that is limited to services provided or advice given for a fee in your capacity as shown on the declarations. It specifically says it does not include day-to-day management of the business. The E&O coverage is phrased very differently. It is not limited to professional services. It is much more broadly stated. But isn't it for the normal course of the business? Is selling a business a normal activity for the business? Selling business is not. Transferring phone lines certainly is. What this company does is it provides central alarm monitoring services. But then we're back at the same point, right? Because if this complaint is not about something other than the sale of the business, i.e. if it has to be the sale of the business, then even the phone lines as part of the sale of the business, then you're out under the errors and omissions clause. Is that right? I'm sorry. I'm not sure I followed. Well, if the complaint is limited to matters concerning the sale of the business and not monitoring issues, then you're out under the errors and omissions clause. Is that right? I don't agree with that, no. Why? The sale of the – there's two ways to characterize the transfer of the phone lines. Phone lines were allegedly transferred or sold from Criticom to King Central. They focused on it as being part of a sale of a business. But there are all sorts of situations in the alarm monitoring business where phone lines are transferred from one entity to another. Customers come and go all the time. Those customers involve phone lines. It is a normal part of the alarm monitoring business to transfer phone lines from one person to another. That falls within the policy's definition of a service normal to the business. In this case, the transfer arose in the context of a sale of the business. But the act that is the alleged error and omission is the transfer of these lines. And that is, I would submit, part of the normal operations of the alarm monitoring business. And the act alleged is transfer of the phone lines as part of the purchase price, correct? It's transfer of the phone lines in a sale. So part of what the purchaser was paying for was transfer of the phone lines? That's what's alleged in the complaint, yes. But, I mean, that's what we're after, right? I mean, what's alleged in the complaint? Correct, absolutely. But you want to say that transfer of phone lines pursuant to a sale is part of the operation of the business? I think that it can be part of the normal business. But I do think, Judge Berzon, that your suggestion that inferior monitoring services is nowhere found in this complaint. And it's found in the complaint as part of the history of the dispute. But it seems to me that the complaint is quite clear about what it is seeking damages for, and that isn't it. I'd like to take a shot at turning you around on that. Okay. Before we do that, and I want to stay exactly on Judge Berzon's question, could you put my nose in the general complaint? I've got my nose in all these individual complaints. But Judge Berzon is focusing on the ‑‑ Which page are you on? Well, that's what I want to know. I think I was pointing to page 65, which is the Claude's alarm complaint. No. Yeah, I know. But Judge Berzon was reading off of the generic complaint rather than ‑‑ No, I was reading off the generic part of a specific complaint. Oh, I'm sorry. Oh, okay. So I can do with any one of them. Yeah. Okay. I'm sorry. At the beginning it says summary of complaint. Oh. At the end of the story it says what they're looking for damages for. I don't have one that says summary of complaint. What E.R. are you on? If you turn, Judge Fletcher, to page 55 of the excerpts, each of the complaints starts with a summary of complaint. Oh, I see. Summary of complaint. Is that what you're looking at? Yes. I think, Judge Berzon, that you are drawing an inference that that's merely contextual. That's what Scottsdale argues, that these allegations are merely contextual. But the law in California requires that if there's any ambiguity as to whether the complaint seeks damages based on those allegations, the duty to defend is triggered. And here's why I think the initial reaction is wrong. The plaintiffs ‑‑ You know what you can do for me after you get through? Just point to the ‑‑ tell me what provision you're relying on and just exactly what language you're relying on in the insurance policy and what the error or omission is. Absolutely. That's your main string to your bow is the errors and omissions. I think both arguments are strong, but we've placed the errors and omission first in our brief because we do think it's stronger. The errors and omission coverage requires coverage for the following. In a case seeking damages because of injury as a result of an error or omission to which this insurance applies. Error or omission is not a defined term. It's defined as any negligent act, error or omission while performing any services normal to the business of the insured. That's the coverage. What's the negligent act here? The negligent act here is the breach of contract in failing to provide monitoring services. The negligent act is what? Is failing to provide adequate monitoring services. A failure to provide monitoring services is clearly an act or an error or an omission and it rises up the business. The business is defined as alarm, installation and monitoring. So how is that a negligent act? Well, it's alleged to be negligent. There's a cause of action for negligence which specifically alleges that the foregoing acts were done negligently. Tell me in the real world what was negligent about it. Well, you're asking us to kind of go beyond. I'm just asking you in the real world. Well, I can give you examples of where negligence would arise in the alarm monitoring business. There could be a failure to pass on a signal which results in no police responding. It could be a false alarm that's passed on. Those are the types of negligent acts that arise in the alarm monitoring business. Slow response. So which cause of action, aside from this generic language, do you find is raising the question? I understand that in the recitation of facts there's a mention of this, but where in the causes of action is this raised? Paragraph 6 at page 73. This is in the EGLE protection complaint. But before I go to paragraph 6, this is after you got allegations that my client was providing, quote, alarm monitoring services to the plaintiff up through February of 2000. They allege that it continued all the way until February of 2000 that my client was responsible for the alarm monitoring services. They then allege that those services were inferior. They then allege here in the breach of contract cause of action the following. IDC's conduct as alleged herein. Conduct as alleged herein includes the provision of monitoring services, the inferior monitoring services. That conduct as alleged herein constitutes a material breach of the agreement between IDC and EGLE to provide monitoring services. I think this has to be read not to cover the sale of the assets. That's a negligence action? That's a breach of contract cause of action. Right. Now, let me ask you. The same as to then allege to be negligent. But your argument then is, as to this breach of contract argument, that having transferred the business to the new entity, is it King? I forget. Yes, King Central. That they're nonetheless on the hook that is to say they can't get out from under their obligations under their original contract by mere sale of the business? Is that the argument? That, I believe, is the inference that can and should be drawn from the plaintiff's complaint. I don't believe that's correct as a legal matter. But that is the basis upon which these plaintiffs sued Critico. I don't think there's. Excuse me. I want to follow on with that. So let me follow this. If it is true that we have an argument that your client, having sold the business, is still on the hook for negligent performance or non-performance of the contractual obligations, then the argument is, well, having transferred the phone lines to the new person, to King, they won't give it back, that's negligent? That's the argument? No. I think there's. Are you saying that the fact that King doesn't provide very good services is part of this complaint? Absolutely. Oh, gee, that's hard to see here. I don't think it's hard to see it all from paragraph six. When you talk about a failure to provide monitoring services, that's what paragraph six alleges. Paragraph six doesn't even talk about the transfer of the phone lines. Paragraph six says IDC breached by failing to provide monitoring services. But it's a breach of contract cause of action. It's not a negligence cause of action. The identity of the cause of action is breach of contract isn't determinative of coverage under an ENO policy. All right. But this doesn't say anything about they negligently breached the contract as opposed to they purposely breached. It doesn't say anything about that. Well, if you then flip forward to page 79 in the same complaint, it goes on to say that it is negligent. Seventh cause of action, negligence against IDC. IDC's conduct alleged herein, again, the same conduct that's being referenced in the breach of contract action, among others, constitutes negligence. And then as in paragraph 37, as a proximate result of IDC's negligence, IDC has suffered general and special damages. And, again, paragraph 36, right in between there. It says specifically, this is an express statement by the plaintiffs in these complaints, that our complaint is not based solely on the transfer of the phone lines. It says they failed to properly perform its obligations, breached its duty of care by, among other things, selling EGLE's phone lines. That is an explicit statement that there are things other than the transfer of phone lines. Yes, and that had to do with the sale of equipment. That's in here, too. Well, Your Honor, with due respect, the duty to defend requires that all inferences be drawn in favor of coverage. The duty to defend is the most precious right under an insurance policy. Without the duty to defend, an insured may end up going into default. Fortunately, this insured had the assets to continue to defend itself. But the courts in California have consistently, since Gravy-Zurich and going back, bent over backwards, if there is any allegation that can trigger a potential for coverage, it's recognized. Here, I submit that. Tell me what the potential is here. The allegation is that the plaintiffs. Tell me what the potential is. Forget about the allegation. The potential coverage is that Credit Com is found liable for providing negligent monitoring services to these plaintiffs, resulting in damage to those plaintiffs. That is alleged. And that is a negligent act, error, or omission in connection with the provision of alarm monitoring services. So your argument now, just to make sure I understand it, your argument now is, not foreclosing the sale of the phone lines argument, but your argument is that King, which is now the successor in interest, is performing negligently. And this seems to be true because that's why these people are trying to withdraw from them. But you're saying that the negligent failure to respond timely or whatever it is, which clearly would be covered had it been your client negligently failing to perform timely and dropping a call and so on, King's failure is your client's failure. I think that's exactly the inference that Kenneth should be drawing. And it seems to be undisputed that King is failing. That's why Claude and all these other people are saying, hey, we want out of here. That's correct. But, boy, you've got to work pretty hard to find in the complaint that there's a continuing obligation to your client after sale to King. I don't think you have to work very hard to find. Independent of the sale of the phone lines. I'm no longer talking about the sale of the phone lines. When you just talk about whether this complaint is on all fours with the coverage terms, frankly, I can't imagine a situation where a single allegation in a complaint more precisely matches the coverage grant than the allegations in paragraph 6 combined with those in paragraph 35. Allegations in paragraph 6 say that it was a material breach of the agreement between IDC and CLAWS to provide monitoring services. That's characterizing the agreement. It's not characterizing the cause of action. The agreement is an agreement to provide monitoring services. That's what they're saying. Correct. They're alleging that there's a breach in not providing alarm monitoring services. That's step one. I think this is common ground between the two of you, that if you had never sold, and so if we're not fighting about transfer of phone lines, but rather you have a contract under which you are obliged to provide monitoring services, and you drop two or three calls and the house burns down because, you know, your employee was sleeping or the supervisor refused to discipline a drunk employee, that that would be covered under the policy. I don't think Scottsdale would dispute that. So even though it's a breach of contract, it is nonetheless negligence within the meaning of the policy. Absolutely. I think there's no question. So the only question then is whether or not we've sufficiently alleged that your client has a continuing obligation after transfer of the business to King. That's correct. And whether or not this negligence that doesn't mention that, it says among other things selling the phone lines instead of, among other things, failure timely to respond to calls and various things. That's correct. It includes that. The specific there is the transfer of the phone lines, but the among other things clearly denotes that there are other actions. And when you look back through the complaint. You're gilding the lily if you say clearly denotes. Well, when you look back through the complaint, though, what the other actions are that are alleged that could constitute a failure to provide monitoring services, it has to be the allegations of inferior monitoring services, the allegation in paragraph six. It could be the sale of equipment. It's so hard to figure out what you're trying to say. Well, the reason is that sometimes plaintiffs aren't very artful in the way they draft their complaints. The problem is you didn't say this. I mean, that's right. Yeah, you didn't draft this. That's correct. My client didn't draft this. Plaintiffs sometimes are very inartful. I'm sure this panel has seen pro-perk complaints that are basically unintelligible. It's not our responsibility that there are ambiguities in this complaint as to what among other things means. But it is clear, and it is clear, that there is a reference to inferior monitoring services being provided at a time when it is alleged by these plaintiffs that my clients were responsible for providing those services. Now, I should know this, and I think it's in the record, and it's just slipping me. Were Claude's and Eagle and all these other people informed of the sale from your client to King?  I don't, and I honestly don't know the answer whether they were told in late 1999 or whether they were told at some later time. When they finally say, hey, I want out of here. Precisely. So they may not have known. They might have thought your client was delivering the services. Correct. And the point is this. Scottsdale harps on the point that, well, gee, there's been a sale. How can Criticom be responsible for the inferior monitoring services that cause damages if they've sold the business? Well, the policy here requires Scottsdale to defend even if the claim is frivolous, fraudulent, and baseless. It specifically says as much, that they're required to defend even where it's frivolous and fraudulent. So even if ultimately it's true that there's no basis to hold Criticom liable for the provision of those monitoring services, they're required to defend. If that is an issue potentially raised by this complaint, and I think that it fairly is, aside from the allegations, which I think really do very closely track the coverage grant of the E&O policy, we offered extrinsic evidence. And one of the plaintiffs, Eagle Protection, was deposed, and he was asked in this case, is there any other damages? This is at Pages 225 to 226 of the excerpts. Is there any other damages that you know of that you can articulate orally that you don't have documents for? Answer, only the 11 months of my interruption of my business caused by this fiasco. He goes on to say, I had to be on call to field calls from my customers and instruct King Central on how to operate the systems. Question, because King Central wasn't giving you very good service? Answer, King Central was inept. That is extrinsic evidence that one of the plaintiffs in this case, when asked about his damages in this case, the case against CreditCom specifically referred to the damages resulting from the inept services that resulted in a fiasco to his business. That, as I understand it, is a further result of the sale of the phone lines. In other words, it's all of a piece, no? Well, I think that you are not – you're drawing inferences in a way that may be logical. I don't deny that that's an inference that can be drawn, but I think it is not an illogical – But there's no way – there's no reason to draw the other inference that he was talking about, something other than the – he said that they – after the lines were sold to this other company, they got lousy service. How does that prove that they were trying to complain about CreditCom giving lousy service? It doesn't. It proves that they're trying to prove that the person that they sold it to gave lousy service. But this is not a complaint against King Central. They have sued King Central. They have sued King Central on – we've gotten the excerpts. The only connective must be the sale. Anyway, I think you're really out of time. Okay. Thank you, Marilyn. Good morning. I'll be quick. There's only – Alan Uter for Pelley Scottsdale. There's only one wrongful act alleged in this complaint, and that is that they sold phone lines that belonged to other people. They pocketed the money, and then when they were sued, they asked the insurance company basically to say, now you take care of it. We get to keep the money, in effect, is what they said. The fact of the matter is you look at these allegations, and they're talking about selling property owned by someone else, and that's the money that they're seeking. That's not covered under the Arizona mission. It isn't – Arizona mission refers to performance of services normal to the business. It's none of those things. It's not performance of anything. It's not the service that is selling the company is not normal to the business. I mean, it's with all respect. Can I ask a question? Mm-hmm. The profession that I was reading from is called summary of the complaint, which is I'm reading from the Clause of Arms System. Is that in every one of the complaints? Yeah, I believe it is, Your Honor. They're almost identical. They're drafted by the same firm. There's the same attorney on all of these. And the only differences I can find is the timing in which they each fired King, frankly. They may have fired King because King provided inept services. That's fine. But that's not what they're suing Criticom for. That's when they realized when they fired King that Criticom had sold their phone lines. And so now they're suing Criticom for selling their phone lines. That's what this complaint is about. And the allegations about King providing inept service was just – that's just how they found out, that they'd been tricked. Was there ever any allegation – I'm not – I'm just talking about the complaint. But any allegation elsewhere in this lawsuit or in the lawsuit against Criticom that they were responsible for the errors and omissions of King, let's just say the bad service provided by King? No, I never heard anything like that. Did that ever show up in that lawsuit? No. And that's not what this suit is even about. It's about the phone lines. No, I don't see any allegation like that at all. Well, I understand. I'm not asking about whether it's in the complaint. I read the complaint, and I've got – it's pretty hard work to find that there's an allegation that Criticom has a continuing obligation even after sale to King, da-da-da-da-da. I'm asking in the lawsuit that was actually – that actually went forward against Criticom, was there ever any allegation of a continuing obligation by Criticom to perform monitoring services that King negligently performs? There's nothing else in the record at all about the Criticom lawsuit besides the complaint. What they put into evidence extrinsically is evidence from the King lawsuit, not evidence from the Criticom lawsuit. So there's absolutely nothing else in the record, as I see it, besides the complaints that pertain to Criticom. So there's nothing. The answer is – What about the deposition testimony with regard to the one lawn company? That was taken in the King lawsuit, not in the Criticom lawsuit. And it has nothing whatsoever to do with Criticom. They're saying King's services were inept. Look, if Scottsdale had insured King and they were suing King for inept services, fine. Of course that's covered. So to come back to something I think we agree on, but I want to make sure that if this were a lawsuit against – let's say King has exactly the same policy with you that you in fact have with Criticom. King starts dropping phone calls and da-da-da-da-da. Even though it's a breach of contract, would it be negligence within the meaning of your insurance contract? Oh, sure. You know, it doesn't matter how you frame the cause of action. We look at the facts. And by the way, thanks for reminding me – The only issue then really is whether or not it's fairly within this complaint that Criticom has a continuing obligation to provide services even after it's sold to King and that King's defaults are its defaults. That's – Yeah, there's no way to read this complaint this way. In fact, Judge Javitsian said that it was plainly false to claim it could be read that way. And with respect to this paragraph 6, we've heard discussion about talking about an agreement to provide monitoring services. That was just the nature of the agreement. The breach of it was selling the phone lines. That's just a description of what the agreement was. So that doesn't get them anywhere at all. I have nothing else unless you have more questions for me. Thank you. Can I correct one statement? Yeah, you can correct one statement. Mr. Uter, I think this spoke. He said that the deposition testimony I referred to was from the King lawsuit. If Your Honors look at the excerpts of record at ER-223, it's clear that was a deposition taken in the Criticom lawsuit after the King action had been settled. This was testimony by the plaintiff as to their damages and claims in this lawsuit. Thank you, Your Honor. Okay. Thank you. The matter will stand submitted and the court will recess until 9 a.m. tomorrow morning. All rise. The Court of Discussions is adjourned.
judges: Pregerson, W. Fletcher, Berzon